# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:05cr0048 AS |
| | ) | |
| ANTHONI SMITH | ) | |

### *MEMORANDUM OPINION AND ORDER*

The defendant filed a motion to suppress on September 16, 2005, and the United States of America filed a written response on October 19, 2005. This court heard evidence on October 27, 2005 and has the benefit of the transcript of that evidence now. The parties filed simultaneous briefs on November 14, 2004, which are of good quality.

There is a two-count indictment against this defendant filed on May 12, 2005. It charges that on October 19, 2004, and again on October 22, 2004, this defendant, Anthoni Smith illegally possessed a firearm. The indictment further alleges that Anthoni Smith was on both dates a convicted felon which is not disputed here. The dispute here centers around a Fourth Amendment issue with regard to probable cause. St. Joseph County Police Officer Andrew Taghon observed a blue Cadillac Escalade on Fillmore Road in western St. Joseph County on October 19, 2004. This police officer observed that blue Cadillac Escalade crossing the center line of the roadway two or three times as it approached the intersection of Mayflower Road. This county police officer then followed that Cadillac Escalade and radioed his dispatcher to run an inquiry on the vehicle's registration. He also noticed the blue

Escalade cross the center line again.  The vehicle was stopped to determine whether the driver was intoxicated.

Before stopping the blue Escalade, Officer Taghon learned that the registered owner of that Cadillac vehicle had an active body attachment from the St. Joseph County Probate Court.  The officer thereupon stopped the vehicle which was occupied by this defendant alone.  The officer determined that the driver was the same person for whom the warrant had been issued but that the driver was not intoxicated.  It is of some moment that the officer learned that the registered owner of the blue Escalade had an active body attachment before stopping the vehicle.  At the stop, the officer had this defendant step from the vehicle and placed him in restraints before securing him in the back of a police car.  The officer testified that he thought there was a warrant and not just a notice to appear at that time.  Thereafter, the officer began to conduct an inventory of the defendant's vehicle before impounding it. There was no other licensed driver present to drive the vehicle, so it was impounded.  By this time the defendant was in the back seat of the officer's police vehicle.  It was at this time that the firearm was found in the defendant's Escalade.  The handgun and bags of marijuana were found in a map holder on the driver's seat.  Subsequently, the marijuana tested positively. It was at this point that the officer gave the advice required in *Miranda v. Arizona*, 384 U.S. 436 (1966).  The officer testified that the defendant Smith admitted that he knew the firearm was there but denied knowing about the marijuana.  All of this occurred in approximately a five-minute time frame.

2

The second incident which occurred on October 22, 2004 involved a South Bend police officer, Michael Ingle. The incident on that date occurred on Ironwood Drive near Calvert Street in South Bend, Indiana. Officer Engle was northbound on Ironwood when he saw a vehicle traveling in the opposite direction on that street. He noticed that the driver, driving alone, was not wearing a seatbelt so the officer turned around and stopped the vehicle. At that time other officers came to that location. Officer Engle approached the driver's side of the red Cadillac he had just stopped in order to speak to the driver. He noticed that the driver of the vehicle was not wearing a seatbelt, in violation of the traffic laws of the State of Indiana. Kathy Fulnecky, also a South Bend police officer who handles drug detection trained dogs, came to that location at that time. She had a trained and certified drug detection dog with her. The dog had undergone extensive training under the supervision of Officer Fulnecky. Again, the driver was the defendant Smith. Officer Fulnecky took the dog around the car. The dog alerted in a fashion as to suspect the presence of narcotics or controlled substances in the vehicle in question. A firearm was discovered during the search that followed immediately on the dog's alert. All of this occurred within a time frame of approximately three minutes.

Here, the focus in both searches is whether the firearm should be excluded from evidence under the Fourth Amendment of the Constitution of the United States, and particularly under *Mapp v. Ohio*, 367 U.S. 643 (1961). It appears that the discussion of the Fourth Amendment as reflected in *New York v. Belton*, 453 U.S. 454 (1981) is broad enough

to justify both the incident of October 19, 2004 and the incident of October 22, 2004, although that result is not without some concern. Certainly automobile searches have gone through a considerable evolution since *Carroll v. United States*, 267 U.S. 132 (1925). More recently, the *Carroll* concept has been expanded (or stretched) in *Thornton v. United States*, 541 U.S. 615 (2004). This court does not conceive that it is necessary to invoke Chief Justice Rehnquist's footnote four of the *Thornton* opinion, noting that Justice O'Connor concurred in *Thornton* with the exception of that footnote four. However, *Thornton* is enough authority to justify both of the searches here without invoking the often used backup position found in *United States v. Leon*, 468 U.S. 897 (1984).

Focusing on the inventory search here, it appears that the same is within the outer perimeters defined in *Arkansas v. Sullivan*, 532 U.S. 769 (2001), and does not fall afoul of *Indianapolis v. Edmond*, 531 U.S. 32 (2000). Closely aligned factually with regard to the seatbelt violation is *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001). On January 24 this year, in an opinion authored by Justice Stevens in *Illinois v. Caballes*, 125 S.Ct. 834 (2005), the Fourth Amendment was interpreted wide enough to include this factual setting. Both of these factual settings raise legitimate Fourth Amendment concerns. Certainly no criticism can be made of this able defense lawyer for raising them. Neither can any legitimate criticism be made of the police officers in question and the way in which they conducted themselves on the two dates in question. Issues under the Fourth Amendment deserve careful consideration.

The police conduct on the two dates in question does not transgress the boundaries of the Fourth Amendment of the Constitution of the United States.  Therefore, the motion to suppress as to both incidents is now **DENIED**.  **IT IS SO ORDERED**.

**DATED:**  November 17, 2005

_____S/ ALLEN SHARP_____
**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**

5